310-371, People of the State of Illinois Appellee, by Jerry Kittlebeck, v. Deanna L. Mibbs, appellant by Martha Fisher. Good morning, your honors. May it please the court, counsel, representing the defendant in this case, Deanna Mibbs. Deanna was convicted in a jury trial of unlawful possession of methamphetamine precursor and unlawful possession of methamphetamine, and she was sentenced to 12 and a half years imprisonment. The five issues are raised on appeal. The first issue she maintains that the search of a motel room that she rented was done without lawful justification, that the evidence seized from that room should have been suppressed. However, the defendant's motion to suppress it was denied, the ruling was erroneous, and she asked this court in issue one to reverse the orders denying the motion to suppress and to reverse her conviction outright. Because without that evidence, the state would not be able to re-prosecute her. Alternatively, in issues two through four, she seeks a remand for a new trial. She does so in issue two based on the admission at trial of involuntary incriminating statements. She does so in issue three based on the prosecution's violation of two pretrial in limine orders, so that evidence of marijuana found in the room was introduced at trial, and evidence of other incriminating statements found in the room were introduced at trial, even though the judge had ruled prior to trial that those things were inadmissible. And finally, she seeks a new trial in issue four based on prosecutorial misconduct in closing argument, in which the prosecutor told the jury that Deanna was the face of methamphetamine production in Tazewell County, and that without her, there could be no methamphetamine production in the county. Finally, issue five concerns the sentencing order and the directions that she submit a DNA sample and pay a $200 fee. Those requirements were superfluous because she'd been ordered to do those things in conjunction with a prior conviction. Now, in argument today, I intend to focus upon the first issue involving the search of the motel room, and the second issue involving the incriminating statements. Of course, if your honors have questions about the other issues, I'd be happy to address those as well. Now, prior to trial, defense filed a motion to suppress evidence contraband found in a motel room that had been rented by Deanna Miz. There were actually several hearings before two different judges on the motion because there was a motion to renew, there was a motion to reconsider. Initially, the state argued that it was a valid parole search because it had been initiated by Deanna's parole officer who testified that Deanna was then serving a term of MSR. The initial trial judge consulted the transcript of the original plea hearing in which all of the parties at that point had believed that Deanna was pleading guilty to a Class X felony which would have carried with it a three-year term of MSR. And this search was conducted within three years of her release from prison. So based on that, the judge initially found this was a valid parole search. However, defense presented additional evidence in support of the motion to suppress showing that despite what all the parties believed at the time of the original plea hearing, in fact, the offense she had pled guilty to was only a Class I, carrying with it a two-year term of MSR. And this motel room search was conducted more than two years after her release from prison. The second judge to confront the issue, Judge Grohe, based on this evidence, actually ordered that records in the county be corrected to show that the prior offense was a Class I with a two-year term of MSR. Based on that evidence, based on the judge's ruling, the state had to concede this was not a valid parole search. So the state then switched gears and offered two alternative justifications. One, that the parole officer acted in good faith because he seriously believed that she was still on MSR and alternatively, that the evidence was seized pursuant to the plain view doctrine. The judge accepted both of these arguments, allowed the evidence to come into trial. Defendant submits the ruling was erroneous because neither justification applied. Now with respect to plain view, the parole officer testified that when he knocked on the motel room door, it was open, not by Deanna, because she wasn't there at the time, but by a friend or acquaintance of hers. And he claimed that while standing outside the open doorway, he saw property inside the room which appeared to be contraband. So he went inside, searched, and seized the property. The prosecutor and the judge argued that simply by him seeing that property from outside the motel room door, that allowed him to seize it pursuant to the plain view doctrine. That's what the state argued, that's what the judge found. But both the state and the judge missed a very important step in the analysis. And that is that the officer required separate legal justification to enter the room to seize the property. Now had he lawfully been inside the room and seen apparent contraband, he would have been allowed to seize it. But because he's outside the room when he seized the property, that doesn't necessarily get him inside the room. He needs separate legal justification, such as consent or a warrant or exigent circumstances. Trial prosecutor did not argue that any of those things existed. The judge did not find that any of those things existed. Now the state on appeal argues that the evidence shows consent or exigent circumstances. Defendant Smith's doubt was the state's burden in the trial court. And those were findings that the trial judge had to make. In addition, because it was never argued in the trial court, defense never had an opportunity to respond to that in the trial court. Beyond that, the defendant submits that this record does not establish any separate lawful justification to allow the officer to get into the room. And for that reason, defendant submits, the plain view doctrine was not satisfied in this case. Now with respect to good faith, the only real comment by the judge here, because the judge said his primary ruling was that the evidence was seized pursuant to the plain view doctrine. But he did respond to the argument about good faith. And he said, you know, this is such a unique, fluky type of circumstance that he would not apply the exclusion article. Now it's true, I think this is a very unique circumstance. But that's really a separate question from whether good faith was established. And again, the burden is on the state to establish good faith. All the parole officer really testified to was his belief that she was still on MSR. But he never stated the basis for that knowledge, that she was still on MSR. The defendant submits there's got to be more than just saying, well, I think she's on MSR. In addition, even if the parole officer was not at fault here, evidence presented in support of the motion to suppress showed that at some time before Deanna was released from prison, the Department of Corrections realized that her offense was really a class one. And in fact, they gave her sentence credit that she would not have been allowed to receive had she been a class X felon. In addition, Deanna gave uncontradicted testimony that she was told prior to leaving prison that she would have to serve a two year term of MSR. Now if the Department of Corrections knew that it was a class one, clearly they were obligated to pass that information on to their parole officer and not to allow him to continue to monitor Deanna for more than two years. So either the parole officer was guilty of reckless or gross negligence or the department was guilty, one way or the other, the defendant submits the exclusionary rule should be applied and this evidence should have been suppressed. Now clearly a parolee has a diminished expectation of privacy during the term of parole or MSR. But once that term is concluded, that person has the same expectation of privacy as do all the rest of us. Clearly the judge found here that that parole term had expired prior to the search. So it was not a valid parole search. The state needed alternative legal justification for the search. It did not exist in this case. And for those reasons, Deanna respectfully asks your honors to reverse the orders denying the motion to suppress. And because the state would not otherwise be able to prosecute her, she asks your honors to reverse the conviction out. Right. Now alternatively... I have a question about the exclusionary rule. And I know your argument is that because corrections was negligent, they didn't make sure that when she was released that they knew it was a Class I and that her MSR term was just supposed to be two years. But I know that the case is harrowing that you cite in your brief. With just her case that we know about, is that enough to establish the gross negligence that I think is needed for the exclusionary rule? Or do we need more than that? I think it's enough. I think it's a case-by-case basis. And the fact that in most cases this type of thing does not arise, I don't think is a justification to allow what happened here to let it lie. And it's true there is some talk I think in hearing about systemic negligence. There's no particular showing that there was systemic negligence in this case. But I think under the fact of this case, I think clearly in this case there was either gross or reckless negligence. And I think that's enough in this case. Also, I think there's always the possibility that if it's allowed to happen in this case, it could possibly arise in another case. One of the problematic things here is that there was not sufficient evidence presented to show, was it the Department of Corrections that did not adequately advise its parole officer? Perhaps the department did, and the parole officer continued to monitor. We just don't know that. What we do know is clearly the parole term expired, and we know that the Department of Corrections realized that it was only a two-year term before she was released. And because this is such an important Fourth Amendment constitutional right that we're dealing with here, again, yes, she has a diminished expectation of privacy during the period of parole, and that's her own fault for having committed a prior conviction. But once that expires, she's entitled to every protection that all the rest of us are. Whose burden is it to show gross negligence? Is it the state's burden to show there wasn't gross negligence, or the defense burden to show there was? Because where the burden falls is going to, perhaps, decay. Well, certainly it's the state's burden to show that there was justification for the search that occurred in this case. So I would submit the burden falls on the state. The state, again, the state's first argument was it's a valid parole search. That was obviously blown out of the water. When the state argued good faith, I would submit that's almost like an affirmative defense, and it's the state's burden to establish good faith, or alternatively, plain view doctrine, or alternatively, whatever legal justification they might come up with. Is the court record itself enough for good faith? Because the court record had to be changed after the fact. You mean the record on appeal? The record of conviction, the underlying record of conviction. As to her prior conviction that put her on MSR in the first place. Well, again, it was actually a negotiated hearing. It's somewhat brief. It shows the attorneys advising the judge that she's pleading guilty to a Class X felony. I believe there was an agreed term of six years imprisonment. When in doubt, who should the parole officer listen to? The court record or DOC's? Well, he's employed by the DOC. Now, it's an interesting question because, again, they didn't get into too many details here. You would have almost expected testimony along the lines of, well, as a parole officer, I received my marching orders from the department. This is what they tell me, or this is how I find out. Oh, I have a new parolee to monitor, and now I know how I'm told how much time she has to do on MSR. Is he left on his own to figure all that out? Has he said, oh, go look at the transcript of the prior hearing? I don't know. There wasn't such evidence presented. Nor do I, which is why I enjoy this exchange. But you've piqued my interest a little bit, and you can move on. Okay. Thank you, Your Honor. Again, I think it's the state's burden here. The state's saying, well, this is the alternative justification. I think the state has to prove it, so the defendant would submit the burdens on the state. In the alternative, Issues 2 through 4, the defendant seeks a new trial, and she does so in Issue 2, based on the admission of alleged incriminating statements made to a police officer. Parole officer testified that after he came into the motel room and he did some search, that all of a sudden Deanna showed up, that he then handcuffed her, brought her into the bathroom, questioned her, and she allegedly told him the contraband in the motel room belonged to her. He then contacted a police officer who came to the scene. The police officer then questioned her, and she allegedly made the same statements to him, although she denied making any incriminating statements. A motion to suppress was filed as to both of the statements made to the parole officer and the police officer. The judge barred the statements made to the parole officer because they had not been preceded by Miranda warnings, but he allowed the statements made to the police officer because they were preceded by Miranda warnings and because there was some gap in time before the police officer questioned her. And so the judge allowed the statements to the police officer. The defendant submits none of the statements should have been presented, should have been admitted before the jury. Totality of the circumstances analysis applies. Two factors arguably support the state that questioning was done by two different officers and that there was some lapse in time. The other factors the defendant submits support barring the statements. First, the parole officer testified that he intentionally did not Mirandize Deanna. That distinguishes this case from Oregon versus Elstad, in which the officer said it was an oversight at the time of the first questioning. Secondly, she was handcuffed throughout the questioning and kept in the motel room. All the questioning was done in that room. There was a gap in time between the two, and it's not clear exactly how long the gap was, but it was clearly less than an hour. It appears to have been less than half an hour. It might have been only 15 or 20 minutes. Further, the parole officer testified that when the police officer came into the room, the parole officer told Deanna, tell him what you just told me. The defendant submits this was a single continuing course of interrogation, not two separate interrogations as in Oregon versus Elstad, and therefore the statements made to the police officer were tainted by the unwarned statements made to the parole officer. For that reason, the judge should have suppressed the statements to the police officer just as he suppressed the other statements. Further, there's prejudice here because, of course, they're incriminating statements, which is very powerful evidence for the prosecution. Deanna, thank you. Thank you. Thank you, Your Honor. Thank you, Mr. Kennedy. Mr. Genetovic. May it please the court, counsel. Questioning by the court, because I'm sitting at counsel table, kind of changed the entire perspective of my argument. I don't know if that's good or bad. Well, we'll find out, won't we? Your Honor asked whether or not the fact that we have this mistake and the fact of DLC recognizing that it was a Class I as opposed to a Class X, whether or not that's the kind of enough evidence to show that this takes it out of the good faith exception. Well, the first question that came to mind when I sat there and heard the question, and I heard counsel's response, was counsel argued, well, we know DLC had changed this. How do we know that? The only evidence we have is a testimony from the defendant that supposedly she was told upon release that, oh, we made this change, which led me to Your Honor's question about burden of proof. What we're trying to establish here is, yes, indeed, we know after the fact what. The court order said she pleaded guilty to a Class X, six years, three years MSR. We now know after the fact, as conceded by the prosecutor, that was a mistake. She would have been Class I, two years MSR. So the question gets down to, how does that mistake affect or does it have an effect on what was done here? I think it's the... The affect or effect goes only to the officer's good faith. That is correct. And so I think it, first of all, has to be established that somehow DLC knew this. Other than, just like we have the defendant's testimony that she was told this, we have Burrell's testimony. I got the paperwork in front of me. He treated this as though she was on MSR for three years. He treated it as though he really didn't know. Now, yes, she testified. I told him. But, again, as Your Honor pointed out, who's he going to believe? The defendant or... Did she get some good time credit that you can't get with Class X and her release doesn't add up? The actual date that she's out should indicate to a parole officer. Not necessarily so. Parole officers got in there three years MSR for this release. He's not going to sit there and go and call the statutes and call the regulations of DLC. His job is to take and be the parole agent for this individual. He's got the court order. And what we're talking about here... I guess when... It's hard for me because I can't take and go through his entire testimony. Time doesn't allow me to do that. But when you look at his testimony and you see what he testifies to, I think that you can get from this parole agent the fact that he was in charge of this individual, was looking out for her best interest, and was not trying to take and necessarily find a fault, find a problem. He believes he was doing his job. And his job told him, based on the court order, three years. Now, if she had something else, as... There was a situation, almost similar to this, in which a defendant said, hey, wait a second. I'm off of parole. I've got this document, this piece of paper, to show you. And that should have raised a red flag to those individuals. There's nothing here. And I think when we talk about burden, I think in this case, the burden is on the defendant to have established that, in fact, DOC knew about this. And, in fact, DOC somehow conveyed this to Burrell to the point of he ignored it. If that was the situation, chances are likely I wouldn't be here, because that certainly would not be good faith. But in this case, we're looking at the good faith of Burrell. We're looking at what he did. Did he act based on the knowledge he had, based on the facts that he had before him? Could he reasonably have believed that this lady was on three years MSR? But I think that I want to couch the issue a little differently, because he is DOC. So the mistake that I'm talking about isn't that his paperwork says three years, because clearly it does. But that is that because it said three years, and yet it should have been two years. And, in fact, upon reflection and in hindsight, it's clear that DOC apparently treated her in respects as if it was a two-year, a Class I, because she got some time she couldn't have gotten otherwise. So whether he got the paperwork that said three, is it gross negligence on DOC as an entity that he got the wrong paperwork? Well, interesting question, because one could have made the same argument, one could have made the same statements in 1984 in Leon. One could have made the same arguments in the same statements that you just made in 1995 in Arizona v. Evans. And certainly they could have done exactly the same thing in 2009 in Herring v. United States. All three of those, there were mistakes. Mistakes by who? Mistakes by an agency that an employee of that agency acted on. All mistakes. All three of those cases, they found that the fact that the mistake, the fact that the mistake was made by an employee of a court, the fact that the mistake was made by a magistrate, the fact that there was a clerical error in employees in the incorrect computer records and how they put the warrant in, the fact that you have all of those mistakes, the court didn't find that that was not systemic. That was not gross. Was it negligent? Yeah. Was it a mistake? Yeah. But the mistake by the entity did not in and of itself necessarily show systemic gross negligence. It was a mistake. Just as the trial judge here, what did the trial judge here find? This was the fluke. In so many words, he was saying this is the poster child of a mistake. And the officer, the agent here acted on that mistake. Does that mean that we can't apply good faith? I don't think so. I think this is a case very much in line with Leon, very much in line with Evans, very much in line with Herring. The mistake here is not intentional. It was not carefully weighed. It was not utterly unconcerned regarding the consequences. It was not flagrant. It was not something that was systemic. It's not something that is in the city, something that affects or pertains to the entire system. The fact that this mistake could happen again, as counsel pointed out, take a look at Herring, take a look at Leon, take a look at Evans. The same mistake could be made again. The question is, in this situation, on a fatality defense. In most cases, the mistake was not generated by the person that relied on the error. And that's kind of how I view this issue. If the corrections officer or the parole officer was negligent himself, then he should have known better. But if he was just doing his job by relying on somebody else's mistake that he did not contribute to, then perhaps there's good faith. So it's going to take a lot of reflection on my part to get through this issue. But I appreciate your comments, and I don't want you to run out of time before hitting some of the other issues. I appreciate that. I think that under the circumstances, I don't think that, and I don't think, and of course the record will bear this out, I don't think that the agent here, the parole agent, ignored anything. I think that basically, I think we have to get down to a question of what is his responsibility as the parole agent, because if he's got 200 people that he's in charge of, that he's required to take and follow, everybody that comes up with a complaint, everybody that comes up with something about what somebody has said or something about their sentence, I don't think he's got a duty or responsibility to check every one of those out. I think it's up to the individual to come forth. If this was the case, I think the defendant in this case had the burden and could have come forth with a corrective information and could have probably put him on notice or at least maybe required him to do something more than what he did here. But I think under the circumstances here, I think this case fits quite well within good faith. As far as plain view is concerned, there are three requirements. You have to be in a position to be able to make the observation. That's number one. Number two, the object has to be incriminating. And number three, you have to have a right of access. In this particular situation, Burrell wasn't a place where the law had a right to be. Whether or not we consider it a mistake, whether or not we consider her on MSR or not, like anybody else, he got information. He got information from whom? The defendant's son. The defendant's son said, my mom is back on meth, she's living in a hotel. Found out who the hotel was. The son went to the parole agent. Why? He said, basically, in so many words, I would sooner see my mother in prison than in a casket. So he gave information. Burrell goes. Knocks on the door. Door is open. He's on the outside of the motel room. Looks in, past the individual, sees objects and items that he associated with the production of meth. Not a problem. Not a problem with where he was. Not a problem with the objects, okay? Problem is the right of access. I like to look at plain view kind of like, in a kind of metaphorical way, I guess, or however. Plain view in and of itself, okay, can never justify an entry. Plain view is like the sidecar on a motorcycle. It has to be attached to something. There has to be something already there that allows the individual, the officer, to be able to have the right of access to get at the object. In this particular case, both of those, or that particular vehicle that plain view attaches to here, is either emergency doctrine, existing circumstances, or the consent to enter. Now, I know counsel has made the comment, or made the argument here, that, well, this was never really specifically argued, okay? This was not specifically a point brought up or the trial judge didn't specifically analyze. And I guess, in a way, what he's probably trying to argue is forfeiture, I'm guessing. But the thing is, in other cases, in other situations, the record here is clear. The question here, with respect to the ultimate conclusion, is a question of law. So, basically, this court can make its own learned judgment, based on the record, as to whether or not either one, be it existing circumstances, the emergency doctrine, or consent to enter, was a sufficient justification to allow Burrell to take and get into that motel room. Counsel, you have two minutes. Thank you. Also, this court can affirm the judgment on anything that appears of record that would support the judgment. And in this case, what we're doing is we're trying to support the judge's denial of the motion to suppress. So, either way, this court can address the issue, this court can affirm this particular aspect has not been forfeited, or whatever counsel is trying to argue with, with respect to the lack of argument. This case is, unlike people versus Ouellette, Ouellette was a not-yet-announced case, as far as an emergency. And in that case, they said, basically, drugs alone, or the fact that they can be disposed of, are not necessarily a situation where it gives you the right to enter. This case is a not-yet-announced case. This case is one where the officer, the agent, remember, while he was going there, the agent was there to see the defendant. Knocked on the door, she wasn't there, but saw the narcotics. As a result of the fact that he sees the drugs, as a result now that the people inside know that he's there, that creates an emergency. Basically, if he did not enter, if he did not go in, did not secure the premises, all the narcotics, all the drugs, could very well be disposed of. Now, I know what we get to. I know we get to the situation where an officer can't create the agency by showing himself. That would be a situation where, if the officer, for example, saw a marijuana plant, the defendant's giving his marijuana plant sunlight during the course of the day, and he sees it in the house. He can't walk up to the house. It's got probable cause, but he can't walk up to the house, knock on the door, have the defendant come, identify himself, and say, oh, wow, I've got an emergency now. You know I'm here, and you know that I know that you have that marijuana plant. That's not our situation. The purpose for him being there wasn't to identify himself in order to be able to enter to seize drugs. His purpose was there to find his parolee. His purpose there was to find out if she was okay. He didn't know that. He knew she was using meth. He knew that she was back on it. Did he have probable cause to believe that there was drugs in there? Could he have gotten a warrant before he went? No. He had no idea that there was meth or anything in there at the time. He had information she was using it, no information that there was anything in that room. Thank you. Any questions? We're happy to respond. Thank you. Mr. Fisher. First of all, Your Honor, just very quickly as the second issue of talking about prejudice with respect to the admission of the statements, one thing I didn't have a chance to mention is that Deanna testified at trial that the contraband in the room did not belong to her. Again, the parole officer testified that when he first knocked on the door and then entered the room, Deanna wasn't there. There were two other individuals there. So certainly under those circumstances, a rational trier of fact might have been inclined to determine that the contraband could have belonged to one or both of those individuals based on this testimony. But, of course, once the jury hears testimony from a police officer that Deanna admitted it was hers, that tends to blow that out of the water, supporting the defendant's argument that there was certainly prejudice from the admission of the statements and that they constituted reversible error. With respect to issue one in the search of the motel room, I believe counsel has argued that, well, we don't really have enough evidence to know that the DOC realized there was an error in terms of the offense that she had pled guilty to because all we really have is the defendant's testimony. I think, as Your Honor pointed out, there actually were two things. Number one, there were physical documents appended, I think it was to the motion to reconsider or the motion to renew, showing that the DOC had been giving her credit that, once again, she would not have been entitled to receive had she been a Class X felon. Secondly, defense counsel offered to bring in as a witness Deanna's prison counselor to testify that, yes, indeed, the DOC had determined prior to her release from prison that it was only a We discussed this with Deanna and told her it would only be two years of MSR. When counsel offered to bring that witness in. But to defeat good faith, there has to be some link between that information and this parole office. Well, I think, actually. Did he have those documents? Did he have access to those documents? And we don't know. And we don't know that. That's part of the problem here. Counsel talks about paperwork, but there was no specific testimony about what the paperwork is. Counsel says, well, he had a court order. I think that's extrapolating a little bit from the testimony. And, of course, your honors have the transcript. My question, whose burden is it to show the systemic negligence? That's the key issue. Well, it's the burdens. It's certainly, once the defense files a motion to suppress, I mean, the state is saying, oh, well, the defense is saying there's no lawful justification. This is a Fourth Amendment violation. The state has to say, well, no, it's not a Fourth Amendment violation because there is justification. So the state's arguing good faith. I think the burden's on the state to establish good faith. When the court says this is a fluke, does that mean the court found it was not systemic, this is unusual? Well, it's a little bit problematic because he made that comment. At the same time, he said, my primary ruling is going to be plain view doctrine. And what I was starting to say before, when counsel asked to bring in the correctional officer, judge said, oh, there's no need because I'm ruling based on plain view. So that was really the primary basis for his ruling. I think he paid lip service to the state's good faith argument by saying, well, this is such a fluke. Again, though, I think that's kind of a separate question. Did this officer have good faith? In addition, as argued in the brief, the case law really says you don't just necessarily look at the individual who's conducted the search. Here, you have to look at both the parole law, either together or alternatively the parole officer and the Department of Corrections. Either the Department of Corrections gave him bad advice or he came up with this idea on his own. Again, it's not clear from the record. That's unfortunate. But the Department of Corrections, it appears clear that they did realize it was only a Class I felony. It was incumbent on the Department of Corrections to tell the parole officer it's only two years. Otherwise, the individual's Fourth Amendment rights are clearly violated. Under these circumstances, defendants admits that there is a clear violation of her Fourth Amendment rights. The only other thing is the officer testified that at one point he went over to Deanna with her parole statement. She has to sign an agreement. Okay, I'm on parole. This is what I do. And he said he talked to her about three years at that point in time. But when they brought in the parole agreement, there's no time limit on there at all. And he also testified that he didn't actually see her until December, even though she had been released in March. And he left open the possibility that another parole officer had talked to her at one point in time. So I don't know that his memory was entirely clear. In summary, defendants admits there was a violation. The state had to show legal justification. They just didn't show it on this record. And she, therefore, seeks relief from Your Honors respectfully. Thank you. Thank you, Your Honors. We will take the matter under advisement. We will be conferring with Justice Holdridge and rendering a decision hopefully without undue delay. For now, we're going to take a brief recess for panel change. Recess. Thank you.